## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT COURT OF MARYLAND SOUTHERN DIVISION

**HOLLEY F. WHITFIELD,**

103 School Avenue
Colonial Heights, Virginia, 23834,

**And**                                           Civil Action No. _____

**MICHAEL WHITFIELD**

103 School Avenue
Colonial Heights, Virginia, 23834

                    **Plaintiffs,**

*v.*

**SOUTHERN MARYLAND
HOSPITAL, INC.**

7503 Surratts Road
Clinton, MD 20735

          Serve:
          Richard G. Mcalee
          Southern Maryland Hospital Center
          7503 Surratts Road
          Clinton, MD 20735,

~and~

**WEATHERBY LOCUMS, INC.**

6440 South Millrock Dr, Suite 175
Salt Lake City, UT 84171-3100

          Serve:
          Doug Warrick
          6440 South Millrock Dr., Suite 175
          Salt Lake City, UT 84121

~and~

**EDNA RUTH HILL, M.D.**
St. Agnes Hospital
900 Caton Avenue #230
Baltimore, MD 21229

~and~

**GASTROINTESTINAL ASSOCIATES OF
MARYLAND, P.A.**
10905 Ft. Washington Road, Suite 405
Ft. Washington, MD 20744

> Serve:
> Thomas P. Gage, M.D.
> 10905 Ft. Washington Road,
> Suite 405
> Ft. Washington, MD 20744

~and~

**LORNETTE MILLS, M.D.**
Gastrointestinal Associates of Maryland
12070 Old Line Centre,
Suite 200
Waldorf, MD 20602

> **Defendants**.

## COMPLAINT

1.     Plaintiffs Holley Whitfield and Michael Whitfield, by and through their attorneys, Barry J. Nace, Esquire and Matthew A. Nace, Esquire, and PAULSON & NACE, PLLC, hereby bring this claim against Defendants Southern Maryland Hospital, Inc., Gastrointestinal Associates of Maryland, P.A., Lornette Mills, M.D., Ruth Edna Hill, M.D., and Weatherby Locums, Inc., and state the following:

## JURISDICTION

2.      This claim exceeds the required jurisdictional amount of $30,000.00 and is filed pursuant to Title 3, Subtitle 2A of the Courts and Judicial Proceedings Article of the Maryland Code (2009).

3.      Plaintiffs timely filed a Statement of Claim in the Healthcare Alternative Dispute Resolution Office on September 26, 2011, from which Defendants filed an Election to Waive Arbitration on July 24, 2012 and an Order of Transfer was entered on July 27, 2012.

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that Plaintiffs are citizens of the Commonwealth of Virginia, and Defendants Southern Maryland Hospital, Inc. and Gastrointestinal Associates of Maryland, P.C. are incorporated in the State of Maryland with their principal place of business in the State of Maryland, Defendant Weatherby Locums, Inc. is incorporated in the State of Utah with its principal place of business in the State of Utah, and Defendants Hill and Mills, are citizens of the State of Maryland conducting business in the State of Maryland, and the amount in controversy exceeds the jurisdictional amount of $75,000.00.

5.      This Court has personal jurisdiction over Defendants pursuant to Md. Code, Courts and Judicial Proceedings § 6-103 and because Defendants have the requisite minimum contacts with the State of Maryland.

6.      Venue lies in the United States District Court for the District of Maryland, Southern Division, pursuant to 28 U.S.C. § 1402 since the occurrence which gave rise to the cause of action arose in the State of Maryland and the Defendants all either reside and or conduct business in Prince George's County, Maryland.

**PARTIES**

7.     Plaintiff Holley Whitfield is and, at all times relevant to this action, was an adult resident of the Commonwealth of Virginia.

8.     Plaintiff Michael Whitfield is and, at all times relevant to this action, was an adult resident of the Commonwealth of Virginia.

9.     Plaintiffs are and, at all times relevant to this action, were married.

10.    Defendant Southern Maryland Hospital, Inc., (hereinafter "SMH") is and at all times relevant to this action, was a health care provider licensed to practice medicine in the State of Maryland, and upon information and belief was practicing in Prince George's County, Maryland.  Defendant SMH also was doing business as Southern Maryland Hospital at 7503 Surratts Road, Clinton, MD 20735, owned and operated Southern Maryland Hospital, and employed, managed, and controlled healthcare professionals practicing medicine at Southern Maryland Hospital including but not limited to the nursing staff, the hospitalist staff, the intensive care unit staff, and the transfer service staff.

11.    Rasheed Abassi, M.D. (hereinafter "Abassi") is and, at all times relevant to this action, was a health care provider licensed to practice medicine in the State of Maryland, and upon information and belief was practicing in Prince George's County, Maryland.

12.    George Okang, M.D. (hereinafter "Okang") is and, at all times relevant to this action, was a health care provider licensed to practice medicine in the State of Maryland, and upon information and belief was practicing in Prince George's County, Maryland.

13.    Defendant Gastrointestinal Associates of Maryland, P.A. (hereinafter "GAM") is and, at all times relevant to this action, was a Defendant licensed to practice medicine in the State of Maryland.

14.     Defendant Lornette Mills, M.D. (hereinafter "Mills") is and, at all times relevant to this action, was a health care provider licensed to practice medicine in the State of Maryland, and upon information and belief was practicing in Prince George's County, Maryland.

15.     Defendant Weatherby Locums, Inc. (hereinafter "Weatherby") is and, at all times relevant to this action, was an entity operating in the State of Maryland and providing healthcare services to the citizens of the State of Maryland.

16.     Defendant Edna Ruth Hill, M.D. (hereinafter "Hill") is and, at all times relevant to this action, was a health care provider licensed to practice medicine in the State of Maryland, and upon information and belief was practicing in Prince George's County, Maryland.

17.     Upon information and belief, Drs. Abassi and Okang were, at all times relevant to this action, employees of Defendant SMH and were acting in their official capacity as such during all times relevant to this action.

18.     Upon information and belief, Sally Young, R.N. and Shannon Asko, N.P. were, at all times relevant to this action, employees of Defendant SMH and were acting in their official capacity as such during all times relevant to this action.

19.     Upon information and belief, Defendants GAM, Hill, and Mills, were agents, servants, and/or employees of Defendant SMH and were acting in their official capacity as such during all times relevant to this action.

20.     Upon information and belief, Defendant Weatherby was contractually obligated to provide emergency room physicians to staff Defendant SMH's emergency room pursuant to the terms entered into under the document produced by Defendant Weatherby and identified as "Service Agreement for Physician Locum Tenens Coverage with Fee Schedule."

21.     Upon information and belief, Defendant Hill entered into a contract with Defendant Weatherby effective as of August 25, 2008 to act as a locum tenens of Defendant Weatherby pursuant to the terms entered into under the document produced by Defendant Weatherby and identified as "Physician Professional Service Agreement."

22.     Upon information and belief, Defendant Hill was an agent, servant, and/or employee of Defendants Weatherby Locums, Inc. and SMH.

23.     Upon information and belief, Defendant Mills is and, at all times relevant to this action, was an agent, servant, and/or employee of Defendant GAM.

24.     Upon information and belief, Defendant GAM had, at all times relevant to this action, entered into an agreement with Defendant SMH to provide gastrointestinal consultations for Defendant SMH.

## BACKGROUND

25.     On or about September 28, 2008, Plaintiff Holley Whitfield presented to the Emergency Department of Defendant SMH.

26.     Upon presentation to Defendant SMH, Plaintiff complained of, among other things, vomiting blood and abdominal pain to Sally Young, R.N., an employee, agent, and/or servant of Defendant SMH.

27.     Plaintiff was then seen by Defendant Hill, who noted in the medical record that Plaintiff was suffering from nausea and frequent, bloody vomiting; that Plaintiff was on birth control pills and migraine medicine; that Plaintiff had irregular white blood count, calcium, glucose, amylase and lipase lab results; and that Plaintiff needed to be admitted to critical care.

28.     Defendant Hill has further testified that she was aware of Plaintiff's complaints of abdominal pain as high as 9 out of 10 upon presentation to the Emergency Department.

29.     Defendant Hill ordered an abdominal series.

30.     According to Plaintiffs' testimony, the abdominal series was cancelled because while Plaintiff was in the process of undergoing an X-ray, she informed staff at SMH that she was weak and was going to fall, at which point she fell to the floor.

31.     Defendant Hill then reviewed the only X-ray taken and formulated a differential diagnosis that consisted solely of an upper gastrointestinal bleed.

32.     While in the emergency department of Defendant SMH, Plaintiff's complaints of pain were so great that she was administered morphine and dilaudid.

33.     Defendant Hill failed at any time to order a CT-Scan, seek a consultation, or request a transfer.

34.     Defendant Hill then contacted Defendant SMH's hospitalist service and spoke with Shannon Asko, N.P., an agent, servant, and or employee of Defendant SMH.

35.     Upon information and belief, Ms. Asko then came to the Emergency Department and discussed the patient with Defendant Hill.

36.     Upon information and belief, Ms. Asko was aware of Plaintiff's complaints of diffuse abdominal pain as high as a 9 out of 10 and the administration of the morphine and dilaudid.

37.     At approximately 1:50 A.M. on September 29, 2008, Plaintiff was admitted to Defendant SMH's hospital without an admission order from Defendant Hill or any physician.  The medical records indicate that Plaintiff was ultimately admitted to the care of Dr. Abassi at or about 1:45 A.M. on

September 29, 2008 with "UGI bleed – acute, vomiting volume depletion, hypotension, hypokalemia, [and] leukocytosis."

38.     According to his deposition testimony, Dr. Abassi alleges that he was aware of Plaintiff's condition, including her complaints of diffuse abdominal pain as high as 9 out of 10 and requiring morphine and dilaudid, at approximately 2:00 A.M.

39.     Dr. Abassi, however, did not see or render any care or treatment to Plaintiff until 08:30 A.M., according to the medical records.

40.     According to the deposition testimony of Ms. Asko, from the time of admission to the hospital until 8:30 A.M. the plan of care for Plaintiff's complaints of diffuse abdominal pain was to simply wait until the morning for the hospital to call for an outside gastroenterology consultation.

41.     Upon information and belief, it was not until 1:15 P.M. on September 29, 2008 that Defendant Mills first saw and treated Plaintiff.  Defendant Mills conducted a gastroenterology consultation in which she noted a differential diagnosis of "1.  NSAID gastropathy/peptic ulcer disease. 2.  Mallory-Weiss tear.  3.  Ateriovenous malformation.  4.  Small bowel lesion."  Dr. Mills then recommended an upper endoscopy and protonix.

42.     On September 29, 2008 at approximately 3:00 P.M., Defendant Mills conducted an endoscopy on Plaintiff and noted "upper gastrointestinal bleeding with the source likely beyond the second portion of the duodenum."  Defendant Mills then noted a differential diagnosis of "1.  Meckel diverticulum.  2.  Arteriovenous malformation.  3.  Small bowel lesion."  A Meckel scan was then recommended by Defendant Mills.

43.     On September 29, 2008, the Meckel's scan indicated, "no abnormality is seen to suggest a Meckel's diverticuulm."  Plaintiff's vital statistics remained irregular and unstable, and her blood loss continued.

44.     On October 1, 2008, Plaintiff underwent a chest CTA that indicated a small left pleural effusion.  Plaintiff's vital statistics remained irregular and unstable, and her blood loss continued.

45.     On or about October 1, 2008, Dr. Okang was contacted to conduct a consultation to determine if Plaintiff needed to be admitted to the intensive care unit because she had been "persistently tachycardic."  Dr. Okang then made the determination to admit Plaintiff to the ICU.

46.     On October 2, 2008, in addition to Plaintiff's other symptoms, Plaintiff was noted to have abdominal bloating, "coffee ground vomiting," a distended abdomen, bile secretions from her NG tube, and was hallucinating.

47.     Finally, on October 2, 2008, Dr. Okang ordered a CT Scan solely because there was "persistent pain in the abdomen."  This CT Scan indicated mild bilateral pleural effusion with biasial compressive atelectasis with moderate ascites, superior mesenteric vein thrombosis, and possible pancreatitis and a small ileus.  No diagnosis was relayed to Plaintiff or her family as a result of the CT scan.

48.     Despite these findings, Defendants failed to administer any anti-coagulation medicine or act in an emergent nature.

49.     Upon information and belief, Defendant Mills and Dr. Okang discussed the results of the CT Scan and merely decided to seek an oncology consultation and to continue her Protonix.

50.     When Plaintiff's mother and husband were finally informed of the CT results, they requested a transfer to the Medical College of Virginia.

51.     Upon information and belief, Plaintiff's family was informed that Plaintiff would not be transferred until and unless a physician from an accepting hospital notified Defendant SMH that they would accept Plaintiff.

52.     Plaintiff's family then made every effort they could to contact a physician at Medical College of Virginia until they finally spoke to a physician who arranged for the transfer.

53.     On October 3, 2008, Plaintiff was finally transferred by medical helicopter to the Medical College of Virginia (hereinafter "MCV") as Plaintiff's condition continued to deteriorate and no diagnosis had been made.

54.     Upon arrival at MCV, Plaintiff was immediately placed in the intensive care unit and diagnosed with acute mesenteric ischemia (hereinafter "AMI").

55.     Plaintiff immediately underwent an exploratory laparotomy, resection of small bowel, and placement of "Poor Man's V.A.C."   During this procedure, approximately 17 inches of Plaintiff's small intestine were removed as a result of necrosis and her abdomen was left open with her bowel disconnected.

56.     Plaintiff's abdomen was surgically closed on October 7, 2008.

57.     On October 8, 2008, Plaintiff was finally extubated and experienced increased agitation and was lacking comprehension.  A NG tube was reinserted and a CT scan was performed.

58.     As a result of the October 8, 2008 CT scan, it was determined that there were additional significant portions of dead small intestine and bowel that required an ostomy, as well as partial collapse of both lungs.

59.     On October 9, 2008, Plaintiff underwent another exploratory laparotomy due to the findings of the October 8, 2008 CT scan.  Following this procedure, it was determined that there was no additional ischemia.

60.     During Plaintiff's hospitalizations at SMH and MCV, Plaintiff suffered additional sequelae of her AMI including but not limited to persistently low hemoglobin levels, rectal bleeding, confusion, agitation, altered mental status requiring medication and psychological consultations, high blood sugar, nausea and vomiting, high pulse rate, rapid shivering and twitching of her jaw, incontinence, inability to talk and/or respond to questions, hospital acquired MRSA, explosive diarrhea, etc.

61.     On October 28, 2008, Plaintiff was discharged from MCV to the Sheltering Arms Physical Rehabilitation Center (hereinafter "Sheltering Arms") for rehabilitation therapy.

62.     Plaintiff was thereafter released to her home, where she required an additional approximate three (3) weeks of care from home health services.

63.     Plaintiff continues to experience significant and severe physical and mental anguish, pain, suffering, inconvenience, physical impairment, disfigurement, and other injuries, as well as additional medical treatment, bills, and loss of earnings and economic capacity.

## Count I
### (Medical Negligence)

64.     Paragraphs 1 through 63 as stated above are incorporated herein by reference.

65.     Defendants Southern Maryland Hospital, Inc., Lornette Mills, M.D., Edna Ruth Hill, M.D., Weatherby Locums, Inc., and Gastrointestinal Associates of Maryland, P.A., and their agents, servants and employees owed a duty to Plaintiff Holley Whitfield to exercise that degree of skill, care,

judgment and expertise ordinarily possessed and used by health care providers acting in the same or similar circumstances.

66.     Plaintiff relied upon Defendants Southern Maryland Hospital, Inc., Lornette Mills, M.D., Edna Ruth Hill, M.D., Weatherby Locums, Inc., and Gastrointestinal Associates of Maryland, P.A. and their agents, servants and employees to exercise such skill and care to properly, accurately, and timely diagnose, treat and manage her medical condition as other reasonable health care providers if presented with the same or similar circumstances.

67.     Defendants Southern Maryland Hospital, Inc., Lornette Mills, M.D., Edna Ruth Hill, M.D., Weatherby Locums, Inc., and Gastrointestinal Associates of Maryland, P.A., and their agents, servants and employees either did not possess the degree of skill, care, judgment and expertise required of them, or did not use the degree of skill, care, judgment and expertise required of them in treating and managing Plaintiff Holley Whitfield.   They thereby breached their duties of care owed to Plaintiff, including, but not limited to, the following duties:

       (a)     To properly evaluate Plaintiff's physical condition before, during, and after admission;

       (b)     To properly carry out treatment and monitoring of Plaintiff and her condition before, during, and after admission;

       (c)     To properly examine, analyze, evaluate, and diagnose Plaintiff's radiological studies;

       (d)     To properly identify the emergent circumstances of Plaintiff's condition upon presentation to the emergency department;

       (e)     To properly and timely order a CT Scan;

(f)     To properly and timely order anticoagulation medications;

(g)     To timely and properly identify a differential diagnosis;

(h)     To properly identify the emergent circumstances of Plaintiff's condition upon admission to Southern Maryland Hospital, Inc.;

(i)     To properly examine, analyze, evaluate, and diagnose Plaintiff's lab studies in the emergency room;

(j)     To properly examine, analyze, evaluate, and diagnose Plaintiff's lab studies throughout her admission to Southern Maryland Hospital, Inc.;

(k)     To timely order and conduct an exploratory laparotomy;

(l)     To timely order and administer anticoagulation medication upon presentation to the emergency department and throughout her admission at Southern Maryland Hospital, Inc.;

(m)    To properly evaluate and diagnose the pain indicated by Plaintiff;

(n)     To properly evaluate the implications of the medications given by Plaintiff through her history;

(o)     To properly consider a small bowel obstruction;

(p)     To properly transfer Plaintiff in a timely manner;

(q)     To properly and accurately keep medical records;

(r)     To properly comply with Defendant Southern Maryland's own Policies and Procedures and contracts with other parties;

(s)     To properly comply with the 2008 Joint Commission Accreditation Hospital Standards;

(t)     To properly inform, instruct, and educate their agents, servants, and employees,

(u)     To properly submit bills and maintain accurate billing practices;

(v)     To properly adhere to their own employment contracts;

(w)     To properly staff its hospital; and

(x)     Being otherwise negligent.

68.     Plaintiff also asserts the doctrines of *res ipsa loquitur* and *respondeat superior*.

69.     As a direct and proximate result of the aforementioned negligence of Defendants Southern Maryland Hospital, Inc., Lornette Mills, M.D., Edna Ruth Hill, M.D., Weatherby Locums, Inc., and Gastrointestinal Associates of Maryland, P.A., and their agents, servants and employees, Plaintiff has endured economic and non-economic damages, including but not limited to significant and severe physical and mental anguish, pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary injuries, as well as additional medical treatment, and bills, and loss of earnings and economic capacity and all other recoverable damages under the law.

### Count II
### (Damage to Marital Relationship)

70.     Paragraphs 1 through 69 as stated above are incorporated herein by reference.

71.     As a direct and proximate cause of the negligence of the Defendants Southern Maryland Hospital, Inc., Lornette Mills, M.D., Edna Ruth Hill, M.D., Weatherby Locums, Inc., and Gastrointestinal Associates of Maryland, P.A., and their agents, servants and employees, Plaintiffs Holley and Michael Whitfield have suffered damage to their marital relationship including but not limited to a loss of material services, love, affection, companionship, and other matters associated with a marital relationship.

**WHEREFORE**, Plaintiffs Holley Whitfield and Michael Whitfield demand judgment, jointly and severally, against Defendants Southern Maryland Hospital, Inc., Lornette Mills, M.D., Edna Ruth Hill, M.D., Weatherby Locums, Inc., and Gastrointestinal Associates of Maryland, P.A., in an amount to be determined at trial but believed to be in excess of the jurisdictional minimum in compensatory damages as permitted by law, plus costs of this suit, pre-judgment interest and such other and further relief as this Court deems just and proper.

**PLAINTIFFS HEREBY REQUEST A TRIAL BY JURY**

Respectfully submitted,

PAULSON & NACE, PLLC

Barry J. Nace, Esquire Bar #1194
Matthew A. Nace, Esquire Bar #29684
1615 New Hampshire Ave., NW
Washington, D.C. 20009
(202) 463-1999
*Counsel for Plaintiffs*

## CERTIFICATE OF GOOD STANDING

In accordance with Maryland Rule 1-313, I hereby certify that I am a member in good standing of the Maryland Bar and licensed to practice law in the State of Maryland with an office address in the District of Columbia.

Barry J. Nace

In accordance with Maryland Rule 1-313, I hereby certify that I am a member in good standing of the Maryland Bar and licensed to practice law in the State of Maryland with an office address in the District of Columbia.

Matthew A. Nace